IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALEN HUSIDIC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC; TRANSUNION DATA SOLUTIONS, LLC; and ARVEST CENTRAL MORTGAGE CO., | ) ) ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff ALEN HUSIDIC, through undersigned counsel, brings this complaint against Defendants EQUIFAX INFORMATION SERVICES, LLC ("Equifax"); TRANSUNION DATA SOLUTIONS, LLC ("TransUnion"); and ARVEST CENTRAL MORTGAGE CO. ("Arvest"), and alleges as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages for violations of the Fair Credit Reporting Act (the "FCRA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337, as Plaintiff's claims arise, in part, under the FCRA. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), as the events complained of occurred in this District.

1

**PARTIES**

4. Plaintiff is a natural person and resident of Illinois who resides in Chicago, Illinois.

5. Equifax is a Georgia limited liability company that regularly does business in Illinois.

6. Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish consumer reports. Accordingly, at all relevant times Equifax was a "consumer reporting agency" as that term is defined at 15 U.S.C. § 1681a(f).

7. TransUnion is a Delaware limited liability company that regularly does business in Illinois.

8. TransUnion regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish consumer reports. Accordingly, at all relevant times TransUnion was a "consumer reporting agency" as that term is defined at 15 U.S.C. § 1681a(f).

9. Arvest is an Arkansas corporation that regularly does business in Illinois.

**FACTS SUPPORTING THE ACTION**

10. Plaintiff had a mortgage loan with Arvest (the "subject loan"), secured by his home.

11. Plaintiff decided to sell his home. A portion of the sales proceeds would be used to pay off the subject loan.

12. Arvest provided plaintiff with a payoff letter dated July 10, 2018. In the payoff letter, Arvest stated that the payoff amount was $159,926.84 as of July 16, 2018.

13. In connection with the closing of the sale of Plaintiff's home, the full payoff amount of $159,926.84 was wired to Arvest on July 16, 2018.

14. Arvest received the full payoff amount on July 16, 2018.

15. When Arvest received the full payoff amount on July 16, 2018, Plaintiff's obligation to Arvest for the subject loan was satisfied in full, and Plaintiff had no further obligation to Arvest related to the subject loan.

16. Arvest nevertheless continued to claim, falsely, that further amounts were due and owing on the subject loan.

17. Arvest falsely reported to Equifax and TransUnion that Plaintiff still owed money on the subject loan and that he was delinquent in making his payments.

18. Arvest's false reports of a delinquency on the subject loan harmed Plaintiff's credit score and credit reputation.

19. Plaintiff called Arvest to protest their demand for additional funds and their false credit reporting.

20. Rather than correct the error, Arvest added fees, interest, and/or other charges to the claimed delinquency, continued to demand payment of these amounts from Plaintiff, and continued to falsely report a delinquency on the subject loan to Equifax and TransUnion.

21. Arvest's continued false reports of a delinquency on the subject loan harmed Plaintiff's credit score and credit reputation.

22. On or around May 8, 2019, Plaintiff sent letters to Equifax and TransUnion, stating that inaccurate information was being reported on his credit report regarding the subject loan and providing supporting documentation demonstrating that he had paid off the subject loan in July 2018.

23. Equifax and TransUnion each received Plaintiff's letter on or about May 13, 2019.

24. TransUnion did not respond to Plaintiff's dispute letters at all.

25. Equifax responded to Plaintiff's dispute letter by a letter dated May 17, 2019. In this letter, Equifax asked for more information from Plaintiff.

26. Plaintiff promptly provided Equifax with the requested information.

27. Equifax made no further response to Plaintiff's dispute letters.

28. After obtaining copies of his recent credit reports, Plaintiff discovered that Equifax and TransUnion are still reporting subject loan with a delinquent outstanding balance.

29. The information being reported by Equifax and TransUnion is false.

30. As a direct and proximate result of Arvest's false credit reporting and the Defendants' refusal to conduct a reasonable investigation and correct the false credit reporting, Plaintiff has been denied access to credit. His credit reputation materially harmed.

### COUNT I—VIOLATIONS OF THE FCRA
### (AGAINST EQUIFAX)

31. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

32. Equifax received Plaintiff's dispute on or about May 13, 2019.

33. To date, Equifax continues to report the tradeline on the subject loan.

34. The tradeline lists numerous inaccuracies including that a balance is owed and that Plaintiff is delinquent on outstanding payments.

35. The tradeline should instead state that Plaintiff was never delinquent and that he paid off the subject loan in full on July 16, 2018.

4

36. Despite the foregoing, Equifax has disseminated credit reports and/or information that Plaintiff is delinquent on the subject loan.

37. Equifax has been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties.

38. The inaccurate information reflects negatively upon Plaintiff, Plaintiff's credit application history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

39. The credit reports have been and continue to be disseminated to various persons and credit grantors, both known and unknown.

40. Plaintiff disputed the inaccurate information with Equifax via U.S. mail, and by following Equifax's established procedure for disputing consumer credit information.

41. Upon information and belief, within five days of Plaintiff disputing the inaccurate information with Equifax, Equifax notified Arvest of Plaintiff's dispute and the nature of the dispute.

42. Upon information and belief, within five days of Plaintiff disputing the inaccurate information with Equifax, Arvest received notification from Equifax of Plaintiff's dispute and the nature of the dispute.

43. Upon information and belief, Equifax updated the reporting of the inquiry at issue solely based upon the information it received from Arvest in response to Plaintiff's dispute.

44. Despite Plaintiff's efforts to date, Equifax has nonetheless deliberately, willfully, intentionally, recklessly, and negligently failed to perform reasonable reinvestigations of the above disputes as required by the FCRA, has failed to remove the inaccurate information, and has continued to report the derogatory inaccurate information about Plaintiff.

45. Plaintiff has been damaged, and continues to be damaged, in the following ways:

a) Adverse credit action;

b) Out of pocket expenses associated with disputing the information only to find the information to remain on the credit report;

c) Emotional distress and mental anguish associated with having incorrect derogatory personal information transmitted about Plaintiff to other people, both known and unknown;

d) Denial of credit, loans, financing and/or other damages, not yet known by Plaintiff; and,

e) Decreased credit score which may result in inability to obtain credit or favorable terms on future attempts.

46. At all times pertinent hereto, the conduct of Equifax, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of Plaintiff herein.

47. 15 U.S.C. § 1681i(a) of the FCRA provides as follows:

Reinvestigation required

. . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate. . . .

48. Equifax willfully or negligently failed to conduct a proper and reasonable reinvestigation concerning the inaccurate information in Plaintiff's credit report after receiving notice of the dispute from Plaintiff, in violation of 15 U.S.C. 1681i(a)(1).

49. 15 U.S.C. § 1681i(a) of the FCRA provides as follows:

Prompt notice of dispute to furnisher of information

. . . Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. . . .

6

50. Equifax willfully or negligently failed to provide all relevant information provided by Plaintiff regarding the dispute of the inaccurate information to the furnishing agency, in violation of 15 U.S.C. § 1681i(a)(2).

51. 15 U.S.C. § 1681i(a) of the FCRA provides as follows:

Consideration of consumer information

In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

52. Equifax willfully or negligently failed to consider all relevant information submitted by Plaintiff concerning the dispute of the inaccurate information, in violation of 15 U.S.C. § 1681i(a)(4).

53. 15 U.S.C. § 1681i(a) of the FCRA provides as follows:

Treatment of inaccurate or unverifiable information

. . . If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—

(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and. . . .

54. Equifax willfully or negligently failed to delete the inaccurate information from Plaintiff's credit file after reinvestigation, in violation of 15 U.S.C. § 1681i(a)(5).

55. 15 U.S.C. § 1681e(b) of the FCRA provides as follows:

Accuracy of report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

56. Equifax willfully or negligently failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. § 1681e(b).

57. The conduct of Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Equifax is liable to Plaintiff for the full amount of statutory and actual damages, along with attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Equifax as follows:

    A. Actual damages pursuant to 15 U.S.C.A § 1681n and 15 U.S.C.A. § 1681o;

    B. Statutory damages pursuant to 15 U.S.C.A. §1681n;

    C. Costs and attorney's fees pursuant to 15 U.S.C.A. § 1681n and § 1681o

    D. Such other or further relief as the Court deems proper.

### COUNT II—VIOLATIONS OF THE FCRA
### (AGAINST TRANSUNION)

58. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

59. TransUnion received Plaintiff's dispute on or about May 13, 2019.

60. To date, TransUnion continues to report the tradeline on the subject loan.

61. The tradeline lists numerous inaccuracies including that a balance is owed and that Plaintiff is delinquent on outstanding payments.

62. The tradeline should instead state that Plaintiff was never delinquent and that he paid off the subject loan in full on July 16, 2018.

63. Despite the foregoing, TransUnion has disseminated credit reports and/or information that Plaintiff is delinquent on the subject loan.

64. TransUnion has been reporting derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties.

65. The inaccurate information reflects negatively upon Plaintiff, Plaintiff's credit application history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

66. The credit reports have been and continue to be disseminated to various persons and credit grantors, both known and unknown.

67. Plaintiff disputed the inaccurate information with TransUnion via U.S. mail, and by following TransUnion's established procedure for disputing consumer credit information.

68. Upon information and belief, within five days of Plaintiff disputing the inaccurate information with TransUnion, TransUnion notified Arvest of Plaintiff's dispute and the nature of the dispute.

69. Upon information and belief, within five days of Plaintiff disputing the inaccurate information with TransUnion, Arvest received notification from TransUnion of Plaintiff's dispute and the nature of the dispute.

70. Upon information and belief, TransUnion updated the reporting of the inquiry at issue solely based upon the information it received from Arvest in response to Plaintiff's dispute.

71. Despite Plaintiff's efforts to date, TransUnion has nonetheless deliberately, willfully, intentionally, recklessly, and negligently failed to perform reasonable reinvestigations of the above disputes as required by the FCRA, has failed to remove the inaccurate information, and has continued to report the derogatory inaccurate information about Plaintiff.

72. Plaintiff has been damaged, and continues to be damaged, in the following ways:

a) Adverse credit action;

b) Out of pocket expenses associated with disputing the information only to find the information to remain on the credit report;

c) Emotional distress and mental anguish associated with having incorrect derogatory personal information transmitted about Plaintiff to other people, both known and unknown;

d) Denial of credit, loans, financing and/or other damages, not yet known by Plaintiff; and,

e) Decreased credit score which may result in inability to obtain credit or favorable terms on future attempts.

73. At all times pertinent hereto, the conduct of TransUnion, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of Plaintiff herein.

74. 15 U.S.C. § 1681i(a) of the FCRA provides as follows:

Reinvestigation required

. . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate. . . .

75. TransUnion willfully or negligently failed to conduct a proper and reasonable reinvestigation concerning the inaccurate information in Plaintiff's credit report after receiving notice of the dispute from Plaintiff, in violation of 15 U.S.C. 1681i(a)(1).

76. 15 U.S.C. § 1681i(a) of the FCRA provides as follows:

Prompt notice of dispute to furnisher of information

. . . Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. . . .

10

77. TransUnion willfully or negligently failed to provide all relevant information provided by Plaintiff regarding the dispute of the inaccurate information to the furnishing agency, in violation of 15 U.S.C. § 1681i(a)(2).

78. 15 U.S.C. § 1681i(a) of the FCRA provides as follows:

Consideration of consumer information

In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

79. TransUnion willfully or negligently failed to consider all relevant information submitted by Plaintiff concerning the dispute of the inaccurate information, in violation of 15 U.S.C. § 1681i(a)(4).

80. 15 U.S.C. § 1681i(a) of the FCRA provides as follows:

Treatment of inaccurate or unverifiable information

. . . If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—

(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and. . . .

81. TransUnion willfully or negligently failed to delete the inaccurate information from Plaintiff's credit file after reinvestigation, in violation of 15 U.S.C. § 1681i(a)(5).

82. 15 U.S.C. § 1681e(b) of the FCRA provides as follows:

Accuracy of report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

83. TransUnion willfully or negligently failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file, in violation of 15 U.S.C. § 1681e(b).

84. The conduct of TransUnion was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, TransUnion is liable to Plaintiff for the full amount of statutory and actual damages, along with attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against TransUnion as follows:

  A. Actual damages pursuant to 15 U.S.C.A § 1681n and 15 U.S.C.A. § 1681o;

  B. Statutory damages pursuant to 15 U.S.C.A. §1681n;

  C. Costs and attorney's fees pursuant to 15 U.S.C.A. § 1681n and § 1681o

  D. Such other or further relief as the Court deems proper.

## COUNT III—VIOLATIONS OF THE FCRA
## (AGAINST ARVEST)

85. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

86. Upon information and belief, TransUnion and Equifax notified Arvest of Plaintiff's dispute and supporting documents within 5 days of receiving his dispute on or about May 13, 2019.

87. 15 U.S.C. § 1581s-2(b) provides, in relevant part, as follows:

(1) In general. After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

    (A) conduct an investigation with respect to the disputed information;

    (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

    (C) report the results of the investigation to the consumer reporting agency;

    (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

    (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

      (i) modify that item of information;

      (ii) delete that item of information; or

      (iii) permanently block the reporting of that item of information.

88. Upon information and belief, Arvest never conducted an investigation regarding Plaintiff's dispute, never reviewed the relevant information provided by Equifax or TransUnion, and never reporting the results of such investigation to Equifax or TransUnion.

89. To date, Arvest continues to report the tradeline on the subject loan.

90. The tradeline lists numerous inaccuracies including that a balance is owed and that Plaintiff is delinquent on outstanding payments.

91. The tradeline should instead state that Plaintiff was never delinquent and that he paid off the subject loan in full on July 16, 2018.

92. Arvest has continued to report derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history Equifax and TransUnion, even after Plaintiff's disputes.

13

93. The inaccurate information reflects negatively upon Plaintiff, Plaintiff's credit application history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

94. The credit reports have been and continue to be disseminated to various persons and credit grantors, both known and unknown.

95. Despite Plaintiff's efforts to date, Arvest has deliberately, willfully, intentionally, recklessly, and negligently failed to perform reasonable reinvestigations of Plaintiff's disputes as required by the FCRA, has failed to provide Equifax and TransUnion with corrections to the inaccurate information, and has continued to report the derogatory inaccurate information about Plaintiff.

96. Plaintiff has been damaged, and continues to be damaged, in the following ways:

a) Adverse credit action;

b) Out of pocket expenses associated with disputing the information only to find the information to remain on the credit report;

c) Emotional distress and mental anguish associated with having incorrect derogatory personal information transmitted about Plaintiff to other people, both known and unknown;

d) Denial of credit, loans, financing and/or other damages, not yet known by Plaintiff; and,

e) Decreased credit score which may result in inability to obtain credit or favorable terms on future attempts.

97. At all times pertinent hereto, the conduct of Arvest, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of Plaintiff herein.

98. The conduct of Arvest was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Arvest is liable to Plaintiff for the full amount of statutory and actual

damages, along with attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Arvest as follows:

    A.    Actual damages pursuant to 15 U.S.C.A § 1681n and 15 U.S.C.A. § 1681o;

    B.    Statutory damages pursuant to 15 U.S.C.A. §1681n;

    C.    Costs and attorney's fees pursuant to 15 U.S.C.A. § 1681n and § 1681; and

    D.    Such other or further relief as the Court deems proper.

### COUNT III—VIOLATIONS OF ICFA
### (AGAINST ARVEST)

99. Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs in this complaint as though fully set forth herein.

100. Plaintiff is a "consumer" and "person" as defined under Sections 1(c) and (e) of ICFA.

101. Section 2 of ICFA prohibits unfair or deceptive acts or practices and states, in relevant part, as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

102. Arvest violated Section 2 of ICFA by engaging in unfair acts in the course of conduct involving trade or commerce when dealing with Plaintiff.

103. Arvest made false and unfair misrepresentations to Plaintiff regarding the status of the subject loan and the amounts owed thereon.

104. It was deceptive and unfair for Arvest to claim that a further balance was owed on the subject loan even after Plaintiff had paid it off.

105. It was deceptive and unfair for Arvest to claim that the false balance owed by Plaintiff increased in amount due to additional charges, when Plaintiff owed Arvest no money and Arvest had no basis to increase the false amount that it claimed that Plaintiff owed.

106. Plaintiff called Arvest on several occasions to dispute Arvest's claims that Plaintiff owed a delinquent balance on the subject loan. Arvest ignored Plaintiff's demands to close out the account and Arvest instead continued to unfairly and deceptive demand further payment from Plaintiff.

107. It was deceptive and unfair for Arvest to fail to correct its errors when Plaintiff had directly told Arvest that the subject loan was paid in full, which Arvest could have easily verified by investigating its own records.

108. It was deceptive and unfair for Arvest to falsely report to credit reporting agencies that Plaintiff had a delinquent balance on the subject loan after July 16, 2018.

109. It was deceptive and unfair for Arvest to fail to investigate Plaintiff's disputes to Equifax and TransUnion after Arvest had been notified of such disputes.

110. It was deceptive and unfair for Arvest to continue falsely reporting to Equifax and TransUnion that Plaintiff had a delinquent balance on the subject loan after Plaintiff had disputed such credit reporting and had provided information demonstrating that the subject loan was paid in full.

111. It was deceptive and unfair for Arvest to refuse to communicate with Plaintiff clearly or respond to Plaintiff's disputes honestly or accurately.

112. Arvest's communications and conduct were purposefully confusing, misleading, oppressive, and designed to maximize profits from a scheme to collect excess payments, charge fees, and willfully ignore disputes to extract additional amounts from Plaintiff even after he had satisfied his obligations on the subject loan.

113. Arvest intended for Plaintiff to rely on its misrepresentations and unfair conduct.

114. Arvest's conduct was willful, malicious, unfair, arbitrary, and designed to maximize Arvest's profits at the expense of Plaintiff.

115. Arvest's conduct offends public policy as it demonstrates a practice of aggressively pursuing collection of amounts not owed, charging unearned interest and fees to a borrower to make a profit, and forcing borrowers to make excess payments under threat of false credit reporting.

116. All of Arvest's conduct described herein occurred in the course of conduct involving trade or commerce.

117. An award of punitive damages is appropriate because Arvest's conduct was outrageous, willful, wanton, and showed reckless disregard for the rights of Plaintiff during the entire course of her relationship with Arvest.

118. Plaintiff suffered damages proximately caused by Arvest's misconduct.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Arvest as follows:

    A.    Actual damages pursuant to 15 U.S.C.A § 1681n and 15 U.S.C.A. § 1681o;

    B.    Statutory damages pursuant to 15 U.S.C.A. §1681n;

      C.      Costs and attorney's fees pursuant to 15 U.S.C.A. § 1681n and § 1681; and

      D.      Such other or further relief as the Court deems proper.

**Plaintiff Demands Trial by Jury.**

      Respectfully Submitted,

/s/ *Daniel Brown*
Daniel Brown (ARDC # 6299184)
Main Street Attorney, LLC
PO Box 247
Chicago, IL 60690
(773) 453-7410
daniel@mainstreetattorney.com

*Attorney for Plaintiff*

18

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that all Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of Plaintiff's claims. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that such Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of any Defendant.

By: /s/ *Daniel Brown*
    Daniel Brown

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorneys' fees have been assigned to counsel.

By: /s/ *Daniel Brown*
    Daniel Brown